J. Irwin Shapiro, J.
This is an application by the guardian ad litem of an infant now 13 years of age for an order authorizing the payment to Saint Michael’s Academy of the sum of $206.50 from the moneys now on deposit with the Long Island City Savings Bank to the credit of said infant for the purpose of paying for the tuition and schooling of said infant for the school year commencing on September 9, 1957.
It appears from the petition of the father that pursuant to an order of the late Mr. Justice William P. Wiener, dated November 19, 1956, the sum of $1,819.50 was deposited with the Long Island City Savings Bank to the credit of the infant. The sum deposited to the credit of the infant was originally received as a result of an injury sustained by her.
In his petition, the father and guardian ad litem states: “ That the purpose of said withdrawal is to pay the tuition of said infant to a private high school, Saint Michael’s Academy, 425 West 33rd Street, New York City, for one year amounting to $180.00; plus yearly book rental of $10.00; yearly activity fee of $10.00 and shoe money of $6.50, making a gross total of $206.50.”
The petitioner further alleges that he “with all respects to public high schools is of the belief that a private religious educational program for the infant herein is for the betterment of her temporal and spiritual interests.”
In these days of rampant juvenile delinquency the court, based upon many years of experience in law enforcing agencies and as a City Magistrate and a Justice of the Court of Domestic Relations, has a sincere belief that religious training, plus a proper home environment, can do more to rid us of this scourge than any other planned program or programs.
*836 Ordinarily, this court is loathe to grant applications to withdraw infants’ funds for the purpose of paying for their educational needs, etc. Those are the responsibilities of the parents and only under the most unusual circumstances should the moneys of an infant be invaded and his or her fund be depleted. An infant is a ward of the court and such applications should never be granted unless the conscience of the court is completely satisfied that greater harm may be done to the infant by the denial of such an application than by granting it.
Under the circumstances, I have given this matter my most prayerful consideration. The laudable purpose for which the money is sought to be withdrawn cannot be denied. The father works for the Consolidated Edison Company and is of modest circumstances. He is presently, out of his meager income, paying tuition of $170 a year for another daughter who is a student at Saint Agnes Academy.
It is apparent that he is a man of deep religious convictions and that he feels that his daughter can get a better start in life by obtaining a sound religious training.
If this application is denied, the infant, upon attaining her majority, will have a fund consisting of money in the bank. If this application is granted, that money fund will be depleted, but her mind will be spiritually enriched. If I must choose between the two, it is clear to me that the spiritual riches which this infant will obtain by getting a sound and basic religious training will be of permanent value to her — a value far more lasting and far more valuable than the maintenance intact of the fund now on deposit to her credit.
If all parents sought to give their children the great benefits of a true belief in God, and the following in practice, and not the mere mouthing, of the Ten Commandments, this world would be a much better place in which to live and we would not, I am certain, be confronted with daily recitals in the newspapers of the activities of gangs of infant hoodlums.
The application is granted and the order which has been submitted is being signed.